# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| PERRY ALLEN STOKES,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | No. C14-4116-LTS<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Perry Allen Stokes seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his application for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Stokes contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant time period. For the reasons that follow, the Commissioner's decision is reversed and remanded.

## I. BACKGROUND

Stokes was born in 1961, has a GED and has past relevant work as a garbage truck driver, laborer and dishwasher. AR 263-64. He applied for SSI on November 24, 2010, alleging a disability onset date of January 1, 2007.[1] AR 259. He alleged disability due to bipolar disorder, anxiety and antisocial disorder. AR 249, 259, 263.

---

[1] Although Stokes alleged disability beginning January 1, 2007, SSI benefits are not payable for any period prior to the month after a claimant files the application for benefits. AR 246, 259; 20 C.F.R. § 416.335. Thus, the relevant period in this case began when Stokes protectively filed his SSI application on November 24, 2010, and continued to July 17, 2013, the date of the ALJ's decision. AR 27, 144.

Stokes' application was denied initially and upon reconsideration. AR 138-44, 154-58. Stokes then requested a hearing before an Administrative Law Judge (ALJ). On December 12, 2012, ALJ Jan E. Dutton conducted an initial hearing, at which Stokes and a vocational expert (VE) testified. AR 37-79. After the initial hearing, the ALJ procured additional information and then conducted a supplemental hearing on April 29, 2013. AR 15. Stokes testified at the supplemental hearing, as did Malcolm Brahms, M.D., an orthopedic surgeon who testified as a medical expert. AR 80-108.

On May 16, 2013, the ALJ issued a decision finding that Stokes was not disabled under the Act. AR 15-27. The Appeals Council denied Stokes' request for review of the ALJ's decision on November 17, 2014. AR 1-5. The ALJ's decision thus stands as the final decision of the Commissioner. AR 1; 20 C.F.R. § 416.1481.

Stokes filed a complaint (Doc. No. 3) in this Court on December 10, 2014, seeking review of the Commissioner's decision. This case was originally assigned to Senior United States District Judge Donald E. O'Brien. Judge O'Brien heard oral argument by telephone on June 12, 2015. Doc. No. 17. Unfortunately, Judge O'Brien passed away before he was able to issue a ruling. This case was reassigned to me on February 17, 2016. The parties have briefed the issues and the matter is fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual

lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. § 416.972(a)-(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a); *see also* 20 C.F.R. §§ 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. § 416.945(a)(1). The RFC is based on all relevant medical and other evidence. *Id.* § 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education and work experience. *Id.* §§ 416.912(f), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v.*

4

*Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v). At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* § 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. § 416.935.

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant has not engaged in substantial gainful activity since November 30, 2010, the application date (20 CFR 416.971 *et seq.*).

(2) The claimant has the following severe impairments: bipolar disorder, not otherwise specified; polysubstance dependence, in remission; an antisocial personality disorder; low back and neck pain and a history of polysubstance abuse (20 CFR 416.920(c)).

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

5

(4) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally lift 20 pounds and frequently lift 10 pounds. The claimant has no restrictions in the ability to stand, sit, or walk for 6/8 hours a day. The claimant can occasionally perform postural activities that include climbing, balancing, stooping, kneeling, crouching, and crawling. The claimant is limited to unskilled work with an SVP of 1-2; work that is repetitive and routine and should not involve extended concentration or tension. Social interaction can be occasional but avoid constant, intense, or frequent with coworkers, general public, and supervisors.

(5) The claimant is unable to perform any past relevant work (20 CFR 416.965).

(6) The claimant was born on May 25, 1961 and was 51 years old, which is defined as a person approaching advanced age on the date the application was filed. (20 CFR 416.963).

(7) The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

(8) Transferability of job skills is not material to the determination of disability because the claimant's past relevant work is unskilled (20 CFR 416.968).

(9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

(10) The claimant has not been under a disability, as defined in the Social Security Act, since November 30, 2010, the date the application was filed (20 CFR 416.920(g)).

AR 18-26.

## IV.   THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188

(8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Stokes makes the following arguments:

1. The ALJ erred by evaluating expert opinions contrary to the correct standards and contrary to the evidence.

2. The ALJ erred by improperly discounting plaintiff's statements.

3. There is not substantial evidence in this record to support the ALJ's finding of the residual functional capacity of the plaintiff.

4. The evidence is overwhelming that plaintiff is disabled and remand for payment is appropriate.

Doc. No. 10. I will address these arguments separately below.

### A. *Evaluation of Opinion Evidence*
#### 1. *Applicable Standards*

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner v. Astrue*, 499 F.3d

842, 848 (8th Cir. 2007) (quoting 20 C.F.R. § 404.1527(b)). "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Other relevant evidence includes medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

Medical opinions can come from a treating source, an examining source or a non-treating, non-examining source (typically a state agency medical consultant who issues an opinion based on a review of medical records). Medical opinions from treating physicians are entitled to substantial weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). Nonetheless, if the ALJ finds that a treating physician's medical opinion as to the nature and severity of the claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] record, [the ALJ] will give it controlling weight." 20 C.F.R. § 416.927(c)(2). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010). However, a treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

At the other end of the medical-opinion spectrum are opinions from non-treating, non-examining sources: "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial

9

evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). This does not mean, however, that such opinions are to be disregarded. Indeed, "an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (internal quotations and citations omitted). Unless a treating source's opinion is given controlling weight, the ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. § 416.927(e)(2)(ii).

In the middle of the spectrum are opinions from consultative examiners who are not treating sources but who examined the claimant for purposes of forming a medical opinion. Normally, the opinion of a one-time consultative examiner will not constitute substantial evidence, especially when contradicted by a treating physician's opinion. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000).

Ultimately, it is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions. *See Finch*, 547 F.3d at 936 ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (citing *Bentley v. Shalala*, 52 F.3d 784, 785-87 (8th Cir. 1995)).

### 2. *The Opinions*

The record contains physical impairment opinions from both Delwyn Lassen, M.D., and Malcom Brahms, M.D. Dr. Lassen is a family practice physician who treated Stokes, while Dr. Brahms is an orthopedist who reviewed records after the first hearing and testified at the second hearing, but did not examine Stokes. The record also contains mental impairment opinions from Michael Baker, Ph.D., a psychologist who performed a consultative psychological examination on March 10, 2011, and Lon Olson, Ph.D., a

state agency psychological consultant who reviewed records but did not examine Stokes. According to his brief, Stokes claims error only with regard to the ALJ's assessment of the physical impairment opinions. Doc. No. 10 at 10-17.[2] As such, I will address only those opinions.

**Delwyn Lassen, M.D.** Dr. Lassen completed a treating medical source statement dated October 25, 2012. AR 865-66. He reported that he had been treating Stokes for about one year, beginning October 21, 2011. AR 865. Dr. Lassen listed diagnoses of low back pain, neck pain, bipolar disorder, impaired fasting glucose and a history of polysubstance abuse. *Id.* He then opined that Stokes could (a) lift and carry up to 10 pounds for 2.5 hours a day, (b) sit and work for 6-8 hours at a time for a total of 8 hours per work day, (c) stand and work for 30 minutes at a time for a total of 1-2 hours per work day and (d) walk up to 6 blocks at a time and up to 6 blocks per work day. *Id.* He reported no limits on Stokes' use of his upper extremities but stated that Stokes will suffer pain after bending and after prolonged walking or standing. *Id.* Dr. Lassen also indicated that Stokes would need "multiple" breaks during an 8-hour day, will experience good days and bad days and would likely be absent from work four times per month because of his impairments or treatments. *Id.* Dr. Lassen reported that the limitations he described had been in effect since July 2011. *Id.*

**Malcolm Brahms, M.D.** In an unusual procedural move, the ALJ sought a medical opinion from Dr. Brahms after the first hearing. AR 15, 958. Specifically, on January 9, 2013, the ALJ caused certain records to be submitted to Dr. Brahms and asked him to complete an interrogatory addressing Stokes' physical RFC. AR 958-70. Dr.

---

[2] Stokes makes one reference to a mental health report issued by a treating source, alleging that the ALJ "tried to cherry pick" by giving great weight to that report. Doc. No. 10 at 13. Other than this single reference, however, Stokes' arguments as to medical opinion evidence relate to those opinions that address his physical impairments.

11

Brahms complied by providing a physical RFC opinion dated January 14, 2013. AR 971-76. Based on his review of records, Dr. Brahms concluded that Stokes could (a) lift 21 to 50 pounds occasionally and up to 20 pounds frequently, (b) carry up to 10 pounds continuously, up to 20 pounds frequently and up to 50 pounds occasionally, (c) sit for 6 hours at a time and up to 6 hours per work day, (d) stand for 4 hours at a time and up to 4 hours per work day and (e) walk for 2 hours at a time and up to 4 hours per work day. AR 971-72. Dr. Brahms further found that Stokes could frequently perform all applicable activities regarding the use of his hands and feet and could occasionally perform such activities as climbing stairs and ramps, balancing, stooping, kneeling, crouching and crawling. AR 973-74. Dr. Brahms reported no other physical limitations of any significance. AR 975-76.

### 3. The ALJ's Assessment

The ALJ gave "little" weight to Dr. Lassen's treating source opinion while affording "great" weight to Dr. Brahms' opinion. AR 23-24. With regard to Dr. Lassen, the ALJ was critical of the fact that despite seeing Stokes for the first time on October 21, 2011, he concluded that Stokes' physical limitations had been present since July 2011. AR 23. The ALJ noted that Stokes has reported that he was involved in a bike accident in July 2011 and observed that the record contains no evidence of treatment for any such accident. *Id.* Thus, the ALJ determined that Dr. Lassen "obviously endorsed claimant's report of an accident without any objective or corroborative evidence." *Id.* The ALJ also stated that "the objective radiology studies have not shown significant abnormalities." *Id.* For these reasons, the ALJ concluded that the significant physical limitations reported by Dr. Lassen were entitled to little weight.

By contrast, the ALJ determined that Dr. Brahms' opinion was entitled to great weight because (a) he "had the opportunity to review medical longitudinal evidence" and (b) he was subjected to cross examination during the supplemental hearing. AR 24. The

ALJ also referenced an MRI report that was received into the record during the supplemental hearing. *Id*. (citing AR 985).

### 4. *Analysis*

The issue is simple: Did the ALJ adequately explain, and support, her decision to favor the opinion of a consulting physician who did not examine Stokes over that of Stokes' own, treating physician? The answer is no. As discussed above, the Commissioner's regulations require that a treating source's medical opinions be given controlling weight unless the ALJ makes certain findings. 20 C.F.R. § 416.927(c)(2). If the ALJ makes those findings, then he or she must apply various factors, as specified in the regulations, to determine the appropriate weight. *Id*. The ALJ must then provide good reasons for the weight given. *Id.*

Here, the ALJ jumped the wide swale from controlling weight to little weight with four sentences that set forth two reasons. AR 23. The first reason is that Dr. Lassen wrote that Stokes' limitations had been present since July 2011 even though Dr. Lassen did not see Stokes until October 2011. The ALJ assumed, probably correctly, that Dr. Lassen chose July 2011 due to Stokes' report of having been in a bike accident at that time. *Id*. Dr. Lassen's treatment notes for October 21, 2011, state that Stokes was being seen because of "low back pain for 2-3 months." AR 833. The notes then describe Stokes' reported history as follows:

> Went over handlebars with bike earlier this summer X 2. Pain since then. Pain will radiate to buttocks and down to calves at times. Pain wakes him at night some times. Recent CT of low back with abnormalities.

AR 833. Thus, Dr. Lassen's initial examination of Stokes occurred because Stokes complained of lower back pain and reported that it had been recurrent since a bike accident two or three months earlier. It is hardly surprising, then, that when completing

his RFC assessment in October 2012, Dr. Lassen indicated that Stokes' limitations dated back to July 2011. AR 865.

The ALJ found this to be troubling, thus accusing Dr. Lassen of speculating and blindly-accepting Stokes' report of having been in an accident in July 2011. AR 23. Even if this criticism is otherwise on point, it affects only the starting date of the limitations Dr. Lassen found, not the limitations themselves. It is undisputed that Dr. Lassen saw Stokes on October 21, 2011, and numerous other times over the next year. Stokes was examined by Dr. Lassen and others in the same clinic for complaints of worsening back pain. *See, e.g.,* AR 770-74, 778-79. By the time Dr. Lassen authored his RFC opinion in October 2012, he was in an excellent position to report on Stokes' impairments and limitations. The fact that Dr. Lassen chose July 2011, instead of October 21, 2011, as the starting date for the limitations he found does not explain the ALJ's decision to afford little weight to those limitations.

The second reason provided by the ALJ is that "the objective radiology studies have not shown significant abnormalities." AR 23. As Stokes points out, however, numerous imaging reports of record do contain objective evidence of abnormalities in the lower spine. AR 704-05 (finding, among other things, a spur at L4-L5 that "creates compression upon the left side of the thecal sac at this level and causing compression upon the thecal sac"); AR 1099 (noting "mild chronic disk disease and bone degenerative changes" along with "spurring of the left S1 superior articular facet" that "narrow the left subarticular space and compresses the dorsal aspect of the left S1 nerve root"). Given this evidence, the ALJ should have – at minimum – provided some additional explanation and support for the second reason she offered for discounting Dr. Lassen's opinion.

An ALJ's decision "… must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

14

SSR 96-2p. Here, the ALJ's decision falls far short of this standard. Perhaps good reasons exist for giving little weight to Dr. Lassen's opinion, but the ALJ neither provided nor explained them. For this reason, I find that remand is required.

I also find lacking the ALJ's explanation for favoring – by a large margin – Dr. Brahm's opinion over that of Dr. Lassen's. The ALJ referenced Dr. Brahm's credentials, noted that he had been subjected to cross examination and relied on the fact that he "had the opportunity to review medical longitudinal evidence." AR 24. Presumably, every non-examining consultant has credentials and is given the opportunity to review records. These factors hardly explain why Dr. Brahm's opinion was entitled to great weight.

The ALJ also mentioned, in a paragraph that appears to have been incorrectly edited, that a recent MRI report found "mild chronic disk disease" and no cord compression. *Id*. Presumably, the ALJ intended to convey a finding that Dr. Brahms' opinion is consistent with that recent finding. However, the ALJ did not actually say so. Nor did she otherwise express a finding that Dr. Brahms' opinion is consistent with the record as a whole. Likewise, the ALJ did not address the seemingly-legitimate issues raised by Stokes' counsel as to Dr. Brahms' credibility and reliability.[3]

Again, the ALJ may have had good reasons for affording great weight to Dr. Brahm's opinion, but the ALJ's decision does not disclose those reasons. As such, on remand the ALJ must revisit and reevaluate the medical opinions of record concerning Stokes' physical RFC and provide good reasons, with citations to supporting evidence in the record, for the weight afforded to those opinions.

---

[3] The record reflects that since April 9, 2008, pursuant to a consent agreement with the State Medical Board of Ohio, Dr. Brahms' scope of practice has been limited to being a Social Security witness. AR 220-24. He is not allowed to practice medicine, provide patient care, examine patients or prescribe medications. AR 222. He is not allowed to provide medical testimony in any proceeding other than "for" the Social Security Administration. AR 221. The agreement includes Dr. Brahms' admission that he made at least one false statement to the Board. *Id*.

15

**B.    Assessment of Stokes' Credibility**

   ***1.    Applicable Standards***

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.*

To determine a claimant's credibility, the ALJ must consider:

   (1)   the claimant's daily activities;

   (2)   the duration, intensity, and frequency of pain;

   (3)   the precipitating and aggravating factors;

   (4)   the dosage, effectiveness, and side effects of medication; and

   (5)   any functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "Other relevant factors include the claimant's relevant work history, and the absence of objective medical evidence to support the complaints." *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). An ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence, *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010) rather such evidence is one factor that the ALJ may consider. *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008). The ALJ need not explicitly discuss each factor, as long as the ALJ acknowledges and considers the factors before discounting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. If an ALJ discounts a claimant's subjective complaints, he or she is required to "detail the reasons for discrediting the testimony and

16

set forth the inconsistencies found." *Ford*, 518 F.3d at 982 (quoting *Lewis*, 353 F.3d at 647).

### 2. *Analysis*

The AJL found Stokes to be "not fully credible." AR 24. The ALJ provided the following reasons for that conclusion:

a. He was denied benefits as a result of a previous application and then filed the current application one month later, "with no severe intervening health issue." *Id*. Moreover, while Stokes emphasized mental impairments in the prior case, he stresses physical impairments in this case. *Id*.

b. While claiming to be unable to work, Stokes told the VA in 2013 that he was applying for unemployment. *Id*. In addition, Stokes performs odd jobs for his landlord. *Id*.

c. Stokes has not been entirely compliant with medications. *Id*.

d. Stokes' activities of daily living suggest that he is not impaired as he claims. AR 25. In support of this reason, the ALJ cited (a) the fact that Stokes claims he was injured in Florida while riding his bike to the beach and (b) Stokes' statement that he was "cohabiting and wants to live in recovery" and planned to get married. *Id*.

e. Stokes' counsel did not furnish updated medical evidence to Dr. Brahms, the medical expert retained by the ALJ. *Id*.

Stokes argues that these reasons are improper and/or lack support in the record.

Some of the ALJ's stated reasons are legitimate grounds for discrediting a claimant's testimony. For example, a claim for unemployment compensation "adversely affects" a claimant's credibility because an applicant for unemployment compensation must hold himself out as available, willing and able to work. *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991). The regulations provide that someone who is able to

engage in substantial gainful activity will not be considered disabled. *See* 20 C.F.R. §§ 404.1571, 416.971. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) (citing *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)). Stokes correctly notes that a claim for unemployment benefits is not automatically disqualifying, as the Commissioner's regulations contemplate certain types of work that a claimant may perform despite being disabled. Doc. No. 10 at 18-19. However, I find no error in the ALJ's consideration of Stokes' application for unemployment as a factor affecting credibility.

Likewise, noncompliance with medications or a recommended course of treatment weighs against a claimant's credibility. *Guilliams*, 393 F.3d at 802. While arguing that the ALJ should not have considered this factor, he does not dispute the noncompliance that the ALJ described. I find that the ALJ was entitled to rely on Stokes' undisputed noncompliance with medications in assessing his credibility.

However, some of the ALJ's other stated reasons are unusual – at best. While referencing Stokes' activities of daily living, the ALJ did not discuss any actual, daily activities. Instead, the ALJ noted that Stokes (a) had traveled to Florida and rode a bicycle on the beach, (b) was cohabitating and (c) planned to get married. None of these activities are inconsistent with a claim of disability under the Act, as a claimant need not prove he is bedridden or completely helpless to be found disabled. *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005). I find it especially puzzling that the ALJ made reference to Stokes' desire to get married, as if such a desire has anything to do with the disability determination.[4]

---

[4] The Commissioner cites various other activities of daily living that Stokes reported during the course of these proceedings. Doc. No. 11 at 15. However, the ALJ did not address those other activities. Rather than attempting to read the ALJ's mind, I will consider only those activities that the ALJ found significant enough to mention.

Likewise, the ALJ's reliance on a different ALJ's decision in a prior case is a reach. On September 2, 2010, ALJ Emily Cameron Shattil denied Stokes' prior application for SSI, finding that he was able to perform light work with several restrictions. AR 112-21. The time period at issue in that case was December 7, 2007, to September 2, 2010. AR 121. The prior ALJ decision has res judicata effect for the time period that was at issue, meaning Stokes cannot relitigate his claim of disability or seek reevaluation of medical evidence concerning that time period. *See, e.g., Robbins v. Sec'y of Health and Human Servs.*, 895 F.2d 1223 (8th Cir. 1990) (per curiam). However, neither the ALJ nor the Commissioner cites any authority suggesting that filing a new application soon after a prior application is denied reflects poorly on credibility. As Stokes notes, this case includes significant evidence that was not available while his prior application was pending, including Dr. Lassen's opinion and new MRI evidence. Doc. No. 10 at 17-18. I find that the ALJ erred in using Stokes' prior, denied application as a factor to discount his credibility in this case.

Finally, I am especially puzzled by the ALJ's final stated reason: Stokes' counsel's alleged failure to provide new MRI evidence to the medical expert that the ALJ chose to retain after the first hearing. The Commissioner wisely chose not to attempt to defend this reason in her brief. Doc. No. 11 at 12-15. I have no idea how Stokes' counsel's alleged inaction could possibly bear on the credibility of Stokes' own, subjective allegations. It appears the ALJ elected to penalize Stokes for the perceived impropriety of his lawyer. The ALJ's reliance on this factor was improper.

In short, the ALJ referenced some good reasons and some bad reasons in concluding that Stokes is not entirely credible. Because I cannot determine whether the ALJ would have reached the same conclusion had she considered only legitimate credibility factors, I will direct the ALJ to reassess Stokes' credibility on remand.

### C. The RFC Determination

Because I have already concluded that remand is necessary in order for the ALJ to reevaluate the opinion evidence and Stokes' credibility, I agree with Stokes that the ALJ's RFC findings must likewise be revisited on remand.

### D. Immediate Finding of Disability

Finally, Stokes argues that the evidence of record, when properly considered, requires an immediate finding of disability and award of benefits rather than remand for additional proceedings. I disagree. Such relief is appropriate only if the record "overwhelmingly supports" such a finding, otherwise, the case is remanded for further administrative proceedings. *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000). While there is no doubt that the ALJ's decision is flawed, I cannot conclude that an award of benefits is the only correct outcome.

## VI. CONCLUSION

For the reasons set forth herein, the Commissioner's determination that Stokes was not disabled is **reversed** and this case is **remanded** to the Commissioner for further proceedings consistent with this opinion. Judgment shall enter in favor of the plaintiff and against the defendant.

**IT IS SO ORDERED.**

**DATED** this 23rd day of May, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE